In the case of Step 2, Step 2 is a creation of a regulation that is not an exception. Step 2 would be extremely vital to weed out around this plant. Step 2 would be no further than not a five-footer. If you had a Step 2 parent, a parent either in the United States or Canada, more than minimally diminishes his or her ability to participate in work activities. The Commissioner argues that Step 2 is irrelevant, given Smith is actually disabled at a later step of sequential evaluation. The Commissioner argues that it is irrelevant that this plant is not grounded. The Commissioner's position is inconsistent with this Court's opinion on the purpose of Step 2 and is also unreasonable on its basis. The Court would not describe how Smith has a merit for his claim if ALJ had preceded him on Step 2 and if the case was remanded, how an ALJ could find Smith disabled on remand. Is it the problem in this case that he did not demonstrate a severe impairment within the term of the disability insurance coverage? But didn't his doctor who treated the knee condition release him to go back to his construction job? Yes. The trained physician Dr. Wertheimer allowed his assistant Smith to go back to his past relevant work. However, Dr. Wertheimer was not a vocational expert. There is no evidence that Dr. Wertheimer had any idea what the lifting and work of work as a heavy equipment operator. Smith reported to the agency that he lifted as much as 80 pounds working as a heavy equipment operator. Has it been consistent with Dr. Wertheimer's opinion that Smith did not do heavy lifting? We think that if it's Dr. Wertheimer's opinion that Smith did not do heavy lifting, Smith would show not only that he could no longer perform after all the work of a heavy equipment operator, but also the number of jobs at Step 5. I'm not understanding this. You're saying that because Smith's testimony undermines his treating physician's testimony that what? Because he's saying he was capable of doing more. There are two issues. One is whether or not the trained physician knew the demands of Smith's past work as a heavy equipment operator and what was previously said about his medical limitations. So he's holding for Dr. Wertheimer's opinion that Smith did not do heavy lifting, disagreeing with his determination, which implies an understanding of vocational factors, Mr. returned to his past work as a heavy equipment operator. Well, it really seems to me the problem is he wandered into that hearing without a lawyer. He didn't develop the evidence. We're compelled to go along with the LJ if there's substantial evidence supporting him. And, you know, you can speculate, but there wasn't any evidence produced of his severe disability. It's just as simple as that. I'm relying on two types of evidence. First, Dr. Wertheimer's opinion and other evidence from him. Dr. Wertheimer reported that in the early 90s, Smith had moderate… Yeah, but the question is, is there substantial evidence supporting the ALJ? And I think he's entitled to rely on the fact that Smith didn't see any problem. He didn't go back to the doctor. It says he didn't have any problem. I mean, what is substantial evidence if it's not testimony from the claimant himself? Yes. Smith is an inarticulate representative for himself. Smith did not realize that he was disabled considering only his knee condition. Yeah, that's interesting. But, you know, you're attacking step two, and it seems to me Bowen against Ukert tells us that these regulations are reasonable regulations. We'd better go by them. What do you do with Bowen against Ukert? We don't dispute that the regulation is valid. We're challenging how it was applied in this case to deny as… You are sort of challenging to skip the step four or five, don't stop at two. Well, the reason we can prove dispositively that Smith had a step two impairment is by showing how he could be disabled at step five, assuming as true the treating physician's opinion. We're told by the regulation, stop at two. Right. The agency defines, and also in the Supreme Court's decision in Ukert, talks about the even if inquiry, that even if a claimant had adverse vocational factors, age, education, work experience, the claimant would not be found not disabled at step two. Step two is a screening device to rule out groundless claims. In this case, the ALJ used the step two to rule to find that Smith did not have a disability or did not have a meritorious claim. Well, if it's step two, it's not severe, that's the end of it. That's the regulation. Well, yes, but we're able to show directly that it was a step two impairment by showing how he would be disabled at a later step of the sequential evaluation. So, counsel, isn't your real – I mean, shouldn't you be arguing that, given the pro se nature of this, that the ALJ did not adequately develop the record so that your client might have been able to put in some of this other evidence of impairment prior to 1996? Yes, Your Honor. We have argued that the ALJ failed in its duty to develop the record, specifically with respect to how far Smith could stand and or walk at one time in total in an 8-hour day. Smith had his main impairment before his date last insured was his knee condition. He told the ALJ that he had difficulty walking. There's also medical evidence of difficulty walking from Dr. Wertheimer. Given those facts, we believe the ALJ should have asked the $64,000 questions how long Smith could walk at one time, how long he could walk total in an 8-hour day. For example, if Smith could only stand and or walk 2 hours in an 8-hour day, he would be limited to sedentary work and he would be found disabled at step five, assuming he didn't have any transferable skills. So, yes, the ALJ made multiple errors, including an error in failing to develop the record with respect to. But it's hindered by not having any medical records or evidence. All she could do was just ask questions of Mr. Smith. Right. There's no requirement for contemporaneous medical evidence. We're relying on the uncontradicted medical evidence from March 1993. At that point in time, he had moderate degenerative arthritis in his right knee, and that would not spontaneously abate. It's an arthritis degenerative condition, so that condition would continue. If I may reserve the rest of my time in rebuttal. Thank you. Good morning, Your Honors. My name is Stephanie Martz on behalf of the Commissioner of the Social Security Administration. Mr. Schnaufer has just vigorously argued that the ALJ misapplied the legal standard at step two. His argument is essentially that he terms it in his brief as a double negative, that if he can prove disability or meet his burdens at step four, that somehow he must meet step two. And what he has done is just to turn the sequential evaluation process on its head. This case is not about the proper application of the legal standard. It's about what the facts show. And the facts show that Mr. Smith did not meet his burden of establishing that he had a severe impairment. Well, the facts have to meet the standard at step two. True. And here the facts are, as you have been discussing with Mr. Schnaufer, is the absence of any medical evidence from May 1993 up until April 1997, which is four months after the expiration of his insured status. The absence of the medical evidence is very indicative of whether or not Mr.   impairment is indicative of the limitations that were significantly limiting him. While step two is a screening device and has been called a screening device to weed out groundless claims, it is still a threshold. And that threshold still must be met. And the threshold, the evaluation process must proceed in order, which is what the  If Mr. Smith has passed relevant work, then therefore he must meet step two. That whole idea was rejected by the Supreme Court in Bowen v. Yucker. In Bowen, the lower court held that the Commissioner's regulation was invalid because it didn't consider vocational factors at step two. And that's precisely what Mr. Schnaufer's argument is advancing. And that was rejected. You do not look at vocational factors such as age, education and prior work experience at step two. Well, shouldn't we send this back to let the record be developed a little further? Because there were several ambiguities in the testimony, and he was pro se. Yes, he was pro se, but the questions were asked. The ALJ asked him what his problems were in 1996, and he responded he didn't really have a lot of health problems in 1996. There was discussion of how much he could lift, and there was a discussion that he had some troubles walking. There are no more medical evidence, there's no medical records to obtain. The questions were asked by the ALJ, asking him what his limitations were, what his health problems were. And, really, if you look down at the record as a whole, Mr. Smith felt that he was disabled because he had a heart attack. And, unfortunately, that heart attack occurred in April of 1997, which is four months after his insured status expired. There's no more development that could be done at this point. I just wanted to briefly touch upon the lifting, Mr. Schnopper's argument about lifting 80 pounds, that his testimony, that Dr. Wertheimer wouldn't know what the exertional demands of his past job were, and that the demands of the job show that he was lifting up to 80 pounds. In his disability report that Mr. Smith completed, he indicated that his ability to lift was really dependent on the particular job he was doing. So it wasn't that every job he did he was lifting 80 pounds. It wouldn't be dispositive of Dr. Wertheimer's opinion or whether he could perform his past job at Step 4. If there are no other questions, thank you. Thank you, counsel. Yes. Smith has an alternative argument. That putting aside the issue of whether we can prove a Step 2 impairment by looking to Step 4 and Step 5, Smith had a severe impairment at 2 alone. Smith had an unconstituted testimony, testimony that district court accepted, is that he could only lift 25 to 30 pounds. Assuming that is true, Smith had a Step 2 severe impairment. We do not need to proceed and look at the arguments about Step 4 and 5, proving dispositively that it is a Step 2 impairment, because we know looking just at Step 2 that it is a severe impairment. The Commissioner argued the vocational factors are not considered. The Commissioner is really arguing that they are considered, because what we're saying is taking apart, taking apart from any age, education or work experience, Smith had a Step 2 impairment. The Commissioner has agreed that our position is contrary to Yuckert. I believe it's not in – Yuckert specifically talked about the even-if analysis, that even if a claimant had adverse vocational factors, the claimant would not be found inaccurately not disabled at Step 2. I believe that in this case, Smith has presented it strong. He's carried his burden to prove that he has a Step 2 impairment, and the case should go forward for further development of the record. Thank you. Thank you very much, counsel. Smith v. Barnhart is submitted. We'll take up Hamrey v. Zitti of Gothel.
judges: Noonan, Wardlaw, Paez